EIEED, P.
The decree of the court below in this case, is to be affirmed with costs. We deem it unnecessary to express our opinions otherwise than by a reference to the opinion of Judge Taliaferro, in which we all concur, *and to cite the following additional authorities: 1 Story’s Equi. Jur., $ 498 a, and note 3; Waggoner v. Dyer, 11 Leigh, 384.
The opinion of Judge H. M. Taliaferro, delivered in the court below and above referred to, is as follows:
“I do not think that the case of Blow v. Maynard rules this case. In that, the rule that a release of one of two or more joint and several obligors releases all, was recognized, whether standing in the relation of principals or sureties. Blow was surety, for Davis guardian of the three female plaintiffs. Davis becoming embarrassed, Blow paid to one a sum to be released, and took a release and an assignment of the bond; he paid to the other a sum to be released, and took a release; and the last prosecuted her suit and obtained a decree for the entire amount of her claims against her guardian, which was paid by Blow. He then brought his suit in chancery against Davis and others, claiming as as-signee of one of Davis’ wards, and to be re-imbursed the amount paid to the others. It was held, that the releases were entire discharges of the bond, so that there was nothing for the assignment to operate upon. If this had not been so, then Blow would not have recovered to the extent only of the loss he was subjected to, but the entire amount of Davis’ debt to his wards, though Blow had paid less. He did recover to the full extent of the sums paid to the wards.
Ho one would be found to quarrel with this decision. It would have been obviously unjust had it gone further; and the only thing in respect of which it could be questioned is, whether it should have gone as far as it did, on the reasoning of the judges who sat in it.
I do not mean to question that case, though unable to see very distinctly how the reasoning of the judges and the decree, as to the sum paid for the first release, can be reconciled with the leading principle stated in it. Blow was declared to be entitled to stand in the shoes of Davis’ wards and to recover the amount he paid them for his principal, Davis. He was supposed to have paid *as surety' for Davis, in part of his suretyship. It was declared, however, that Davis was discharged by force of the release to Blow,' — • and the wards could have maintained no action on the bond. If this was so, then, though Blow, the surety of Davis, might be said to be entitled to stand in the shoes of the wards, it cannot well be seen of what use it could be to him to be placed in them, when the release would be a full answer to an action, whether brought by them or him. It is true, that a surety paying the debt for his principal is entitled to a cession of the rights of action of the creditor; a.nd upon this principle Blow was entitled to recover from Davis every thing he as surety paid for Davis. This principle could hardly, however, be extended so far as to have given him the right to recover, in addition, what he paid for himself upon a contract of his own. It by no means follows, that when a surety gives the creditor a sum of money to release him, that he pays that sum as surety for his principal, in discharge of the debt, though it is true, as a matter of fact, that if he had not been surety he would not have had it to pay. He goes to the creditor and says to him, here you have a bond against myself and another ; I am the surety; what will you take to let me off? I do not want to pay the debt, nor hereafter to be liable for it; I will give you S100 to release me. In such a case, if the creditor takes the $100 and releases the surety, can it in any sense be said that this sum is paid for the principal, or towards the debt? It does not seem to me that it can; but, on the contrary, it is the consideration of the contract to release, and so paid for the release. This was Blow’s case in respect of one of the wards of Davis, and the court directed it to be paid back to him out of Davis’ estate, upon the ground that he paid it for Davis.
I do not quarrel with the case; on the contrary, I think it was decided right; but I state the above views to show that though the principle that a release to one is a release to all o i several joint or several obligors, *was recognized, yet that it was not permitted, even in the case of Blow v. Maynard, to obstruct the course of justice.
This case is a very different one. Robinson’s wards released Read, one of the sureties of their guardian, but at the same time incorporated into the release a proviso that it should not operate a release to John Hewitt, the other surety. The wards and Read, in a contract to which Hewitt was no party, agreed upon its terms, — one of which was, that it should not extend to Hewitt. Hewitt now says that it shall. There is some authority for this bold pretension, in an obiter dictum of Judge Green in Blow v. Maynard; but as this question was not presented in that case, I do not feel myself bound thereby.
I do not mean to discuss this proposition at any length, having neither the time nor means of doing so. What was the intention of the parties, is as obvious as the paper on which the release is written, — ■ about that there can be no doubt. It never was intended to release Hewitt. Hay, it was intended to provide against it. How, I am told that the law, in the place of sustaining and enforcing the intent thus clearly manifest, stops it, refuses to let it govern the contracts between these parties, and deliberately violates it. This is not its office in relation to any other things, and I do not think it ought to be in this in *462 stance. If Hewitt were injured by the release of Read, if he was or could be placed in any worse situation by it than he occupied before, then it would be right for the loss to fall on those who did the wrong. But no such thing is pretended, or if pretended, no such thing would be true. There stands the bond, altered in no respect to the prejudice of Hewitt. He can be called on to pay no more than he would have been bound to pay if the release had never been given, and it shall not be my fault if he'pays less on that account.
The case of Solly v. Forbes, &c., 2 B. & B., which I find in 6 English Common Haw Reports, p. 11, is not *unlike this case, and justifies the decree I shall render. A release was given by Solly, the plaintiff, to Elleman, a partner of Forbes, with a provision that it should not prejudice any claims which the plaintiff might have against Forbes, the other partner; and that in order to enforce the claims against Forbes, it should be lawful for the plaintiff to sue Elleman, either jointly with Forbes or separately. In an action of as-sumpsit against Elleman & Forbes, this release was pleaded by Elleman, and was set out in oyer in the replication, with an averment that the action was prosecuted against Elleman jointly with Forbes, for the purpose of enabling the plaintiff to recover payment of moneys due from Elle-man & Forbes, either out of the joint estate of Elleman & Forbes, or from Forbes, or his separate estate. The replication was demurred to, and the demurrer over-ruled. Dallas, C. J., in delivering the opinion of the court, after declaring that it was the intention to release Elleman as to person and effects, but not Forbes; that the release was not absolute and unconditional, but in terms conditional and provisional, being made subject to an exception, says: Against this, objections of a technical and artificial nature have been raised. He states these" objections to be, that whenever the word release is made use of it must operate absolutely and unconditionally, though followed in the same sentence by words which show it to be partial and particular only, the general words being in no respect repugnant to the special words, but the latter a qualification merely of the former, leaving the release to operate to every purpose, except to the exclusion of the particular purpose which the parties have declared it to be their intention it shall not exclude. After stating these objections, he cites many cases in which they have been disregarded, and quotes with just commendation, the words of Eord Hobart in the Earle of Clanrickard’s case: — “I exceedingly commend the judges, that are curious and almost subtle to invent reasons and means to make acts according to the just intent of the parties, and to avoid wrong *and injury which by rigid rules might be wrought out of the act.” In the case of Solly v. Forbes, &c., the release of Elleman was not allowed to operate to-discharge Forbes. It was a demand against the defendants, as partners, for a partnership debt, due by them to the plaintiff, and if the principle is of universal application, that a release of one is a release of all, then Forbes was entitled to be discharged. That was a case at law, where, if at all, the rule would be applied in all its rigor.
This case differs from that in no respect but this, that this is in equity and Hewitt is a surety. Though a surety he relies upon no equity but upon the law, and pleads it as a matter of legal defence. If it would not protect him at law,— as it seems it would not, on the authority of Solly v. Forbes, &c.,- — much less should it protect him here, where it is against all the justice of the case. This view corresponds with, and is sustained by the doctrine of the civil law in relation to releases. By the civil law releases are divided into two kinds, real and personal. A real release is where the creditor declares that he considers the debt as acquitted, or where he gives a discharge as if he had received payment, although he has not; such a release is equivalent to a payment, and renders the thing no longer due. A personal discharge or release is that by which the creditor merely discharges the debtor from his obligation; such a discharge magis eximit, personam debitoris ab obligatione quam extinguit obliga-tionem. — Potheir on Ob. 360. Such a discharge to one surety does not extend to the other. At page 361 Potheir says: “A personal obligation or discharge to one surety does not discharge his co-sureties: — Nevertheless, if the co-sureties were entitled to compute upon having recourse upon the one discharged, having contracted their engagements at the time with him or after him, it is equitable that a discharge granted to him should liberate them in respect to the part for which, after payment of the debt, they would have had recourse against him, if *he had not been discharged.” The reason is strikingly sensible and just. In conformity with these principles, I think it right, that whilst Hewitt shall not be discharged by the release to Read, he shall be held responsible to no further extent than he would be if Read had not been discharged. — And so the plaintiffs will be entitled, as against him, to no more than one-half of the demand against Robinson, the guardian.
I feel better satisfied with this opinion, as I find it to agree with an opinion delivered by Judge Daniel when he sat on a former occasion in this cause. I find his note filed in the papers in this cause in the following words: ‘‘Is this cause in a situation for a decree for an account ag’st the adm’or of the guardian? If so, let an account be ordered. The deed filed cannot operate to defeat the plaintiffs’ remedy against their guardian, nor should it avail to discharge his securities further than it was intended and expressed that it should; that is to say, to protect Read from any further demand on account of one half of *463 what was due the plaintiffs, if they should fail otherwise to get it.”
Bet a decree be drawn for the balance due the wards, discharging Read, and making Hewitt responsible only to the extent of one-half of the amount due the plaintiffs.